At this time, would Attorney Donna Brown please come to the podium and introduce herself on the record to begin? Good morning. Attorney Donna Brown of Manchester, New Hampshire. I represent the appellant and I ask to reserve two minutes of my time. Yes, you may have it. Thank you. The statutory goal of the federal sentencing guidelines was to diminish sentencing disparity. Yet, here we are many decades later after the passage of those guidelines with a case where someone who was a small-time drug dealer received a sentence of 10 years, yet another player in the case who was a substantially large drug dealer, received no time at all. This result of this type of disparity in this case, as one court described it, is that the sentencing guidelines have the potential to delegate sentencing all the way down to the individual drug agent operating in the field. That's exactly what happened in this case. For 25 years, this court has recognized the potential for this type of disparity and for the potential that law enforcement can... Let me ask a question. I'm looking at the statement of the issue presented in your brief and you don't raise that issue of disparity. What you're saying is that basically it's a low street level dealer and the government is sort of manipulating the sentence. You don't make a disparity argument there. Well, I guess I'm making that as a background as to why we have sentencing factor manipulation. I think I'll work towards that because I want to address the jurisprudence in this circuit as to what factors play in there. Let me also note, because you're talking about the guidelines, they're not mandatory. This is a mandatory minimum sentence. I think you should perhaps focus on the statute as well. I was trying to explain that the disparity in this case is a result of sentencing factor manipulation, which can happen in this case where a minor player or minor person predisposed to doing a lesser crime receives a sentence comparable to someone committing a greater degree of criminal activity. Why should we reject the government's position that its agents were continuing to probe their investigation with the hopes of reaching higher persons and that although they did not successfully do so, that they nevertheless investigated in good faith? There's two reasons, Your Honor. One is that the basis of that belief of moving forward to do additional investigation was based on a non-credible source. The government or the agents in this case learned that that source was not credible after the event which we're all calling the buy bust. When the agents set up a deal that would give the source of the informant's drugs an opportunity to also sell a larger amount of drugs, that failed. And there were other information and even the sentencing judge acknowledged significant credibility issues with the informant. So that belief of continuing the investigation to find other sources was based on unreliable information. What we know is that that one set up was not reliable. But that doesn't necessarily mean that other information that he gave would not have been reliable. Some of it obviously was. Well, it was reliable that the defendant was dealing in small quantities. The cases tend to suggest that a form of misconduct is setting somebody up for a higher amount of drug distribution when you don't have reliable evidence that they are dealing in those quantities. And so it is the defendant's argument that while they might have had information prior to that August, not August, May buy bust, that that person was no longer credible. A lot of the cases that reject the defendant's claim of sentencing factor manipulation do so based on the fact that the agents had reliable information that the defendant was dealing in quantities. What's the difference between let's say somebody who sells cocaine, 5 kilos, mandatory minimum of 10 years versus somebody who sells X number of grams today, tomorrow, every day, small amount of grams but it adds up to 5 kilos, aren't they both selling the triggering amount for the mandatory minimum? And the point is when would then the government have to stop and arrest the person the minute they know the person is dealing with drugs? And then the other thing from a practical standpoint, U.S. Attorney's offices, at least I know in Massachusetts, in Puerto Rico where I'm from, they wait for a threshold amount. They won't, you know, if otherwise it's a state case, they don't take it. So when was the government stopped or when does the government arrest? That's actually a good question. And this court has declined to give guidance on that. And there have been many cases where it was one sale, one interaction, and the one that comes closest to this is the Gibbons case, G-I-B-B-E-N-S, where there was eight transactions. But the target was already engaged in the criminal activity at that time of the, it was food stamp trafficking. And so all of these cases say, this court has said, well, we're not giving specific details of whether it's one, four, 20, one of the cases does say, okay, at some point it's got to end, you can't go on for 50 or, you know, how many years can you engage in this? And there has to be a cutoff, and this court has said it's... I don't think you're answering Judge Helpe's question. I think what, the question he's getting at is why are you less culpable if you deal in the, if you deal in bulk or piece it out? Well, it's the defendant's position that someone who can come up with 770 grams in less than 24 hours is a much more culpable person than someone who comes up with, say, 400 grams over the course of four months. Congress certainly did not agree with you on that point. So you are asking the federal courts to set aside a decision made by Congress as to a mandatory minimum that did not draw the distinction that you are attempting to draw. Totally apart from the issue that the trial judge took very seriously your claim, held evidentiary hearings, believed the government witnesses, totally apart from the fact that you have a daunting standard of review. You are asking us to set aside a legislative determination which Congress is entitled to make about sentencing. Correct. And this very court has also recognized that there is an equitable remedy... My time is up. Yes, it is. Thank you, Counsel. At this time, would Attorney Chen please come up to the podium and introduce himself on the record to begin? Thank you, Your Honors. Alexander Chen, United States Attorney's Office of the District of New Hampshire. May it please the Court. I think Judge Lynch has essentially summarized the entire argument. Congress has spoken very clearly on this issue. There is a mandatory minimum for defendants who deal more than 400 grams of fentanyl. And as Judge Helpe noted, there is no distinction between someone who deals more than 400 grams in a single instance or 400 grams, in this case, over nine separate instances. And nothing here, as Judge Lynch again noted, the government agency questioned, nothing here constitutes an extraordinary misconduct. But we have recognized that in the drug trafficking trade, there are people who are leaders, managers, and then there are lesser players. And our case law does, and the guidelines, in fact, recognize that people who have a lesser role in the trade are entitled to be punished less than the people who are responsible for the massive amounts. And we've also recognized the notion of sentencing manipulation. And so counsel here is saying that there's no purpose other than sentencing manipulation in this instance, because this guy was clearly a street level dealer, not a kingpin. And that there was no reason other than to obtain a higher sentence in pursuing him in particular any further when an arrest could be made earlier and there was no benefit in continuing the investigation as to him. Yes, Judge Thompson. So I'll try to break that down a little bit. So I would say first, the district court in fact did share testimony as to why the agents kept going with the controlled bias. Wasn't all of that information found out before he hit the sale that triggered the minimum? So the sale that triggered the minimum was the seventh sale, if I'm not mistaken. That was in July 2018. So yes, at that point, yes, the government ultimately did learn all the substantial evidence it would discover, with one exception, Your Honor. The eighth and ninth sales were conducted at Summer Street, not Walnut Street. As you remember, the May 2018 buy bus was supposed to occur at the Summer Street address. That fell through, and of course at that point, the law enforcement could not get a search warrant for the Summer Street address. At the eighth controlled buy, that was the first one that actually did occur at Summer Street. However, at that point still, the cooperating individual, Ms. Morris, could not identify the apartment number of the defendant's room at Summer Street. And it wasn't until the ninth and final buy that the defendant, Ms. Morris, was able to identify the apartment number. At that point, law enforcement could go out there and get a search warrant. And in fact, the district judge noted, until Ms. Morris could have the apartment number in hand, no judge in this district would have ever granted a search warrant. Because identifying the, for example, I think the district, I'm paraphrasing here, said that identifying the inside or summarizing the inside of an apartment is not the same as identifying a particular place for a search warrant that a judge would sign off on. And I think Judge Thompson, you also asked about the sentencing guidelines and how they play into this. My response to that would be... Did anyone ask her? Because the apartment was marked. Did anyone ask her what was the number on the apartment? I believe at the post-trial evidentiary hearing, both the district court and defense counsel inquired about that. And the response from the testifying agents was essentially that early on in May 2018, she did not know, and it wasn't until the ninth and final buy that she was able to tell the agents the exact apartment number. And the district court did note that there was no testimony ever listed that the agents never tried to find out the apartment number either. I'm just going to circle back, I think, to the first point raised earlier regarding the sentencing guidelines. Here, Congress has spoken very clearly. The sentencing guidelines cannot circumvent that. Obviously, we have here the jury believed that the defendant was, in fact, dealing more than 400 grams of fentanyl. Congress has spoken on that. The sentencing guidelines can't. There's no way around that. And, of course, sentencing guidelines do allow for a two-level downward variance for a minor player in a drug trafficking conspiracy, for example. I think by statute, there's also the safety valve. So a first-time offender who cooperates fully with the government can have the potential to go below the mandatory minimum. Let me interrupt you because I was going to ask you, you mentioned the safety valve. And I know Judge Lynch pointed, this is a congressional intent, 10 years. But this gentleman, looking at the brief, he's got criminal history category of one. So he's a minor participant, or at least he's not the lead organizer, and there's no evidence of weapons or injuries. So he would qualify if he chooses for the safety valve. If he does that, no mandatory minimum of 10 years, he gets a minus two for the guidelines, and then the guidelines are also advisory. So he's free to argue. So would you agree that the 10-year mandatory bar, at least for this defendant, is not something that precludes him from any further downward variance should he choose the safety valve? Yes, Your Honor, I agree. And the safety valve would require the defendant to fully cooperate. Obviously, he would have to provide the statement, not cooperation to the legitimate system, but a statement. Yes, but that did not happen here. And let me also ask you, I mentioned this with sister counsel, to the extent you can answer, am I not correct that the U.S. Attorney's offices don't prosecute, for example, if it's X amount of fentanyl, a very small amount, it probably is not going to get prosecuted. You need a threshold amount. So that's why the FBI or DA or whatever agents, to bring it to your office, they must have a particular amount. Otherwise, it goes to the state. Am I correct? Yes, Your Honor, I'm sure that each U.S. Attorney's office has a different threshold, but as a matter of fact, in New Hampshire, for example, if it's just a single instance of 30 grams, it's very unlikely that we'll warrant a federal prosecution. And let me also ask, from a law enforcement perspective, in probably any jurisdiction, if you arrest the person for a very low drug bust, probably goes to state court, is released or does very short time, he's back on the street selling again or selling it, and that's why, as a practical prosecutorial investigative matter, that's why you, federal officers, buy several times controlled buys, rather than one. Yes, I agree. It's usually not reactive. The federal government has more, the ability to prosecute cases for a lot of amounts, whereas a street police officer can arrest a person just there. You can't wait, let me wait for next time or next time or next time. Am I correct? Yes, Your Honor, I completely agree. I'd like to follow up. We know that New Hampshire has been particularly plagued with fentanyl distribution and a very large number of deaths resulting from it. Do you happen to know whether the threshold that the federal prosecutors have set in New Hampshire is lower than in other areas where there is less of a fentanyl problem? Unfortunately, Judge Lynch, I do not know the answer to that question. I can tell you that DOJ has dedicated specific, I think under the SOS operation, they're dedicating specific prosecutors to address the fentanyl and opioid crisis. But unfortunately, I do not know the answer to that question. It's kind of interesting that the Justice Department, different U.S. attorney's offices don't communicate more on what local policies are. Thank you. Thank you, Judge. Unfortunately, that's above my pay grade. Let's hope. I'll just conclude briefly by emphasizing that at the end of the day, the defendant must have shown extraordinary government misconduct by preponderance of the evidence. And that's a very narrow fact-bound inquiry, which here turned on the credibility of the two case agents who testified both at trial and at a post-trial evidentiary hearing as to why they had so many controlled bodies on this case. The district court was very experienced in this matter, observed the trial testimony firsthand, and defense counsel had every opportunity to elicit any pieces of evidence unnecessary for this argument. At the end of the day, the district court rejected the argument and found the agents credible. And this court reviews for clear error, and the government believes that the defendant has failed to show any error whatsoever in this case. And unless there are any further questions. There is something in this case unsettling about someone who's a street player getting such a high sentence and someone who seems to be far more culpable walking away. May I answer, Judge Lynch? You may. Okay. So, Judge Thompson, I would first respond to Mr. Benito-Lore in particular. I would say that the record has made, at least the government has made clear, that he is not merely a small-level dealer. He was able to deal over 400 grams of fentanyl, which is a substantial amount, in a relatively short period of time, roughly three and a half months. And I assume, Judge Thompson, you're referring to Ms. Moore as the cooperating defendant, and that's just the way prosecutions work. If a defendant comes in, proffers, willing to cooperate with the government, participating in controlled buys, there is an incentive for them to cooperate. Thank you, Your Honors. Thank you. Thank you. At this time, would Attorney Brown please reintroduce herself on the record? She has a two-minute rebuttal. Thank you, Attorney Brown. Again, rebuttal. I wanted to address the point about safety valve, which it's somewhat ironic that the word safety is in that, because some people who participate in the safety valve are doing the opposite. They're making themselves unsafe. They are subjecting themselves to retaliation, possibly death, assault, and murder, by going up the chain, as Detective Daly referred to at trial, of the lack of a better point of finger at big-time drug dealers. I think the fact that the safety valve exists should not defeat the claim here. Tell us the implication of your argument. Excuse me, Judge Lynch? It's not coming through clearly? Thank you. I was making the point that the implication of your argument is your client chose not to cooperate because he was part of a larger drug organization that would retaliate against him. Is that the inference you meant? That is not on the record, and I wouldn't argue anything that's in the record. What I was responding to is the fact that the defendant could have, or any defendant who's facing a mandatory minimum sentence, could have escaped that by making a proffer. I think it's common knowledge that that is risky business in the drug trade, and that that should not defeat a sentencing manipulation factor claim. That exists in this court, and I understand the previous points about the legislature and about Congress making this law. But we do have sentencing factor manipulation as jurisprudence. Either we get rid of it. If the point of this court is, well, there shouldn't be sentencing factor manipulation, maybe that's the better way to go is just get rid of it. At least there won't be this jurisprudence that people are arguing about. No, you have mistaken the precedent. In extraordinary cases of bad faith, this circuit has recognized an exception. The only question is whether the trial judge committed clear error in finding that this did not fit within those exceptions. You have raised quite valid policy concerns that are larger than this particular case. Our job is to resolve this particular case. Let me ask my colleagues if they have any further questions for you. I'm done. I'm done as well. Thank you, counsel. Thank you. That concludes argument in this case.